394 F.2d 456
 William P. T. PRESTON, Jr., Plaintiff-Appellant,
v.
UNITED STATES TRUST COMPANY OF NEW YORK, Willard S. Simpkins
and Roland L.Redmond, as Trustees under two Deeds of Trust
made by William P. T. Preston, Sr., on February 24, 1931,
and December 11, 1942, respectively, ElizabethPreston
Hutchingsand Doris Preston, Defendants-Appellees.
 Nos. 364, 365, Dockets 31813, 31814.
 United States Court of Appeals Second Circuit.
 Argued March 22, 1968.
Decided April 29, 1968, As Amended on Rehearing
July 24, 1968.
 
 1
 C. Dickerman Williams, New York City (Harold d'O. Baker, Helene E. Schwartz, and Baker, Nelson, Williams & Mitchell, New York City, on the brief), for plaintiff-appellant.
 
 
 2
 Louis L. Stanton, Jr., New York City (E. Sheldon Stewart, Stanley F. Reed, Jr., and Carter, Ledyard & Milburn, New York City, on the brief), for defendants-appellees, trustees.
 
 
 3
 Standish F. Medina, New York City (Medina & Miller, New York City, on the brief), for defendants-appellees, Elizabeth Preston Hutchings and Doris Preston.
 
 
 4
 Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge and BLUMENFELD, District Judge*
 
 BLUMENFELD, District Judge:
 
 5
 The plaintiffs in this diversity suit for imposition of a constructive trust upon assets originally part of a trust established in 1931, now held by defendant-trustees under a 1942 trust agreement claimed in a first count, and for reformation of that 1942 trust deed against certain beneficiaries thereof claimed in a second count, appeal from a judgment of the United States District Court for the Southern District of New York, Bonsal, J., dismissing the complaint for failure to state a claim upon which relief can be granted. At the same time, Judge Bonsal also denied the plaintiffs' ancillary petition for an interlocutory injunction staying state court proceedings by the trustees seeking approval of their final account and an order for final distribution of the 1931 trust assets. We affirm the judgment dismissing the first count and the denial of the ancillary petition, but reverse the dismissal of the second count and remand it for further proceedings.
 
 I.
 
 6
 The plaintiffs asserted separate claims in separate counts to an interest in the assets of the 1942 trust. In the first count the plaintiffs sought to impose a constructive trust upon certain assets once held in a trust established in 1931 by Wm. P. T. Preston, Sr., hereafter the grantor. It was to last until the death of the survivor of the grantor and his then wife, Fanny B. Preston. Consistent with the purpose of that trust to satisfy the grantor's marital obligations to Fanny as worked out in a separation agreement, it provided that a certain amount of the income from the trust was to be paid to Fanny 'until the death, as herein defined, * * * of said Fanny B. Preston.' A separate paragraph in the trust indenture provided that the above quoted expression 'shall for all purposes be deemed to mean the natural death of said Fanny B. Preston or her intermarriage after the date hereof with any person other than the Grantor, whichever of said events shall first occur.' Also included in the indenture was a provision for distribution on the termination of the trust of $1,000,000 from the principal to the issue of the grantor and Fanny, and the balance as the grantor might appoint by his Will in default of which it was to be distributed to his issue living at his death per stirpes. The trustees were empowered to terminate the trust at any time and return portions of the corpus to the grantor, subject to a proviso that the principal could not be reduced below a value of $2,000,000 without the written consent of Fanny.
 
 
 7
 They were divorced in May 1931 and Fanny married Edwin D. Morgan in 1934. The grantor also remarried.
 
 
 8
 In 1942 Fanny Morgan, after bargaining negotiations with the grantor, consented in writing to a return of a portion of the corpus to him in an amount which reduced the principal of the trust to $1,535,259.29. In exchange for Fanny's consent, the grantor, in accordance with the agreement they had reached, immediately paid her $4,000 in cash and created a trust (the second 1942 trust) which provided her with $2,000 annually for life; also, he irrevocably surrendered and renounced his power of appointment over the remaining corpus of the 1931 trust and obtained the surrender by the trustees of their power to terminate the trust. The effect of these surrenders was to guarantee to the plaintiffs an interest in the remainder of the 1931 trust corpus, over their $1,000,000 preference. And, in addition, Wm. P. T. Preston, Sr. created another trust (the first 1942 trust) which provided $2,400 per year each for the plaintiffs[1] and gave to them the entire corpus if the grantor left no issue by his second wife. This last mentioned trust is the subject matter of the plaintiffs' second count and will be considered more fully later.
 
 II.
 
 9
 First we consider the trustees' return of principal to the grantor from the corpus of the 1931 trust.
 
 
 10
 The question presented is whether Fanny B. Morgan was legally capable of giving written consent to a reduction of the trust corpus to an amount less than $2,000,000. In deciding that she was, Judge Bonsal considered all of the documents relating to these transactions as well as affidavits which were submitted to him by the parties in connection with the defendants' motion pursuant to 12(b) and 56(b), Fed.R.Civ.P., for a summary judgment of dismissal of the claim. In a reasoned opinion, reported in D.C., 273 F.Supp. 329, which recites the pertinent provisions of the 1931 trust in haec verba, he held that the definition in the trust indenture stating that Fanny B. Preston's subsequent remarriage would be deemed to be her death related only to the provisions concerning her right to receive income and the use of her life as a measuring life of the trust, in both of which the phrase 'death as herein defined' was used and that, contrary to the plaintiffs' contention, she was not so 'dead' as to preclude her from consenting to the reduction of the principal of the trust, if she felt it would be in the interest of her children to do so. We agree.
 
 
 11
 For the purpose of measuring the term of the trust and the time during which she was to receive benefits from it, the termination of her existence in an unmarried status, as well as in being, could appropriately be defined fictitiously by a legal draftsman as 'death.' The phrase 'death as herein defined' was not used in juxtaposition to the provision in a different clause of the trust indenture under which the power of the trustees to terminate the trust as to any part should be 'subject always to the proviso that without written consent of said Fanny B. Preston (to) such termination * * *' the principal should not be reduced below $2,000,000. Surely her marital status was not intended to preclude her from consenting to a reduction of the principal upon conditions which she believed would benefit her children. The inability of a dead person to give consent results not from a legal impediment attaching to a particular status; it results from the complete impossibility of performing any act. In 1942, she was alive and obviously she could have given her consent to what was done.
 
 
 12
 No claim was made of undue influence, coercion or fraud by any of the defendants, and it was conceded that there was none. Thus, there was no need to go beyond a construction of the 1931 trust indenture to determine that the first count ought to be dismissed for failure to state a claim on which relief could be granted.[2]
 
 III.
 
 13
 We do not find it necessary to consider the additional grounds of the defendants' motion for summary judgment, to wit, res judicata, improper venue, and failure to join indispensable parties. Therefore, we do not review the District Judge's decision that the judgments of the Supreme Court of the State of New York entered in 1943 and in 1957 approving successive accounts of the trustees under the 1931 trust barred the plaintiffs' claim that the trustees' return to the grantor of some of its assets was in violation of its terms as being res judicata.
 
 
 14
 Nor do we regard his dismissal of the complaint on the ground that it failed to state a cause of action but without prejudice to the plaintiffs' asserting any claims they may have in the final proceeding now pending in the New York Supreme Court, as a holding that there was improper venue in this court. The proceeding presently pending in the state court is for approval of the final account of the trustees under the 1931 trust; the question whether the first 1942 trust should be reformed is not in issue in that proceeding. Plaintiffs' ancillary petition for an interlocutory injunction staying this state court action was properly denied, for a federal court, in order to avoid friction and conflict, should be extremely hesitant in interfering 'in fields of law normally and historically local.' Sullivan v. Title Guarantee & Trust Co., 167 F.2d 393 (2d Cir. 1948). In all events, this court has jurisdiction and venue is not improperly laid here. See Beach v. Rome Trust Co., 269 F.2d 367, 373-374 (2d Cir. 1959). However, in view of our determination in the next part of this opinion that the second count should not have been dismissed, we hold that the plaintiff's motion to cite in additional parties[3] was improvidently denied.
 
 IV.
 
 15
 As an alternate means for obtaining the same relief sought in their first count, the plaintiffs asserted in the second count that they were entitled to a reformation of the first 1942 trust. In substance, the second cause of action alleges that this 1942 trust, contrary to the grantor's intent, did not place all of his children in a position of equality and parity of inheritance from him. Specifically, the relief sought is the reformation of the first 1942 trust 'to provide for the distribution of the Trust principal, upon termination thereof, so that the issue of plaintiff, his sister, Phyllis, and Elizabeth Preston Hutchings (the grantor's issue by his second wife) will benefit equally, per stirpes, in their inheritance from William P. T. Preston, Sr.'
 
 
 16
 As we have noted, the notice of motion filed in the District Court by the defendants was for an order pursuant to Rules 12(b) and 56(b), Fed.R.Civ.P., dismissing the action upon the grounds of res judicata, improper venue, and failure to join indispensable parties. The plaintiffs contend before us that this specification of the grounds of the motion was insufficient to put them on notice that an attempt would be made to pierce the allegation in the second count with respect to the accuracy of the grantor's intent as expressed in the trust, or that the various documents offered in support of the defendants' motion as noticed were offered for that purpose. Although their counsel protests that he was taken by surprise when the judge ordered a dismissal of the suit for failure to state a claim, he did not seek an opportunity to offer his present argument in the court below by a motion to reargue or otherwise.
 
 
 17
 The theory underlying the plaintiffs' claim-- that a mutual mistake was made in drafting the first 1942 trust[4] -- although not specifically stated and not called to the court's attention, does lurk in the allegations and was sufficiently discernible, cf. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Gins v. Mauser Plumbing Supply Co., 148 F.2d 974, 976 (2d Cir. 1945), to state a claim upon which relief might be granted. Cf. Leitner v. Goldwater, 48 N.Y.S.2d 614 (Sup.Ct.1944), aff'd, 269 App.Div. 657, 53 N.Y.S.2d 460 (1st Dept. 1945).
 
 
 18
 In the scheme of rules governing practice in the federal courts a motion to dismiss for failure to state a claim is often several removes from an actual trial. Although a motion for summary judgment entails more than a motion to dismiss for failure to state a cause of action, Revlon, Inc. v. Regal Pharmacy, Inc., 29 F.R.D. 169 (E.D.Mich.1961), it still does not reach the stage of a trial on the merits. As this court said in Empire Electronics Co. v. United States, 311 F.2d 175, 179 (2d Cir. 1962), and quoted with approval in Union Ins. Soc. v. William Gluckin & Co., 353 F.2d 946, 951 (2d Cir. 1965):
 
 
 19
 'the court, on a motion for summary judgment, cannot try issues of fact but can only determine whether there are issues of fact to be tried; and, once having determined this affirmatively must leave those issues for determination at a trial. The problem besetting courts lies in defining what is or what is not an 'issue of material fact.' It has been said, and it is quite true, that 'no rigid or magical formula can be offered to determine' its existence. 6 Moore, Federal Practice P56.15(1), at 2103 (1953).'
 
 
 20
 It does not clearly appear that Judge Bonsal found that there was no issue of fact as to whether such a mistake had been made. Since in 1942 it was immediately possible for the grantor to have provided that no more than $500, 000 of the principal of the trust then created should be distributed to his then only child by his second wife on its termination, and that any excess be distributed equally among the grantor's issue per stirpes, the plaintiff should be afforded the opportunity to show that the absence of such a provision was due to a mistake. See Union Ins. Soc. v. William Gluckin & Co., 353 F.2d at 951-952; Empire Electronics Co. v. United States, 311 F.2d at 179-180.
 
 
 21
 The question is not what intent should be derived from the language used in the first 1942 trust indenture but whether that was the language intended. To determine this it is necessary to look outside the instrument.
 
 
 22
 After a scrupulous analysis by Judge Bonsal of the affidavits and documents which reveal that Fanny Morgan in 1942 was represented by highly competent counsel when she bargained for the benefits she obtained for herself and the plaintiffs in exchange for her consent, it may have appeared highly unlikely to him that the plaintiffs could in this case adduce any competent evidence twenty-five years after the creation of this 1942 trust[5] to prove that its provisions mistakenly expressed what was in fact intended. While we are not insensible of some of the evidence which may have induced that view, 'nevertheless, sound judicial administration strongly suggests that a court should not attempt to reconstruct the intent of the parties in a complicated factual situation before they have had an opportunity to present evidence on that issue to the fact-trier.' Union Ins. Soc. v. William Gluckin & Co., 353 F.2d at 952.
 
 
 23
 When and if the second count is subjected to a frontal challenge by another motion for summary judgment, the plaintiffs may be able to produce affidavits or depositions setting forth evidentiary facts to show that there is a genuine issue for trial.[6]
 
 
 24
 Having considered that there was no forthright attempt to pierce the allegations of the second count by a motion directed toward a revelation of them as sham, and, having determined that the court below did not clearly find that there was no genuine issue as to the material fact of mistake, we do not believe the plaintiffs should be penalized by having their second count dismissed for not having attempted earlier to come forward with proof of evidentiary data or specific facts to show the existence of a triable issue of fact. Cf. Dressler v. M. V. Sandpiper, 331 F.2d 130, 133 (2d Cir. 1964).
 
 
 25
 Accordingly, we are obliged to reverse the decision of the court below insofar as it dismissed the second count and remand the case for further proceedings on that count in accordance with this opinion.
 
 
 
 *
 Of the District of Connecticut, sitting by designation
 
 
 [1]
 In the case of the plaintiff Wm. P. T. Preston, Jr., who was 18 years old at the time, such payments were not to begin until his 21st birthday
 
 
 [2]
 Although not pleaded, Fanny's actual consent was established on the defendants' motion. Rule 12(b) provides:
 '* * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'
 
 
 [3]
 The parties stipulated that Phyllis Preston Lee, sister of the original plaintiff, be added as a party plaintiff. In addition, the plaintiffs sought by motion to add Mrs. Hutchings' children as additional parties defendant and their children as additional parties plaintiff
 
 
 [4]
 The circumstances broadly disclose that the final draft of the trust indenture was attached as part of the contractual agreement between Fanny and the grantor. There is respectable authority for the view that a court should discriminate in favor of equitable relief for only a unilateral mistake in a case where the grantor has received no consideration; but against such relief, unless there was mutual mistake, in a case where he has received consideration. 4 A. Scott, Trusts 333.4, at 2634 (3d ed. 1967); Restatement Trusts 2d, 333 (1959). No doubt all this will come clear on remand should the plaintiffs move to amend their complaint in compliance with Rule 9(c), Fed.R.Civ.P., and should the motion be granted. Cf. Hadley v. Rinke, 39 F.Supp. 207, 212 (S.D.N.Y.1941)
 
 
 [5]
 Although the defendants' motion did not assert laches, see CPLR 213(1), (6), Judge Bonsal undoubtedly had in mind the fact that the plaintiff reached the age of 21 in 1945, and thereafter received $2,400 a year from the trust income. Cf. Dixon v. American Tel. & Tel. Co., 159 F.2d 863 (2d Cir.), cert. denied, 332 U.S. 764, 68 S.Ct. 69, 92 L.Ed. 350 (1947)
 
 
 [6]
 It is worth pointing out that the 1961 memorandum of Mr. Redmond of a conference by him with the grantor in 1942 will not suffice, for in its present form it is not 'admissible in evidence,' nor by Mr. Preston, Jr.'s attaching it to his affidavit have its contents been transmuted into his 'personal knowledge.' Indeed, the memorandum was appended to the affidavit only for the purpose of showing that it was what first brought to the affiant's attention the fact that the first 1942 trust had been considered during the 1942 proceedings brought in the state court by the trustees for the acceptance of their interim account in their administration of the 1931 trust