**KANGAROOS U.S.A., INC.,**
**Plaintiff-Appellant,**

**v.**

**CALDOR, INC., Defendant-Appellee.**

**Appeal No. 84–1688.**

United States Court of Appeals,
Federal Circuit.

Dec. 3, 1985.

Donald R. Dunner, of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued, for plaintiff-appellant. With him on brief, of counsel, were Charles E. Lipsey and Karen G. Bender, of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., and Jeffrey L. Michelman, of Popkin, Stern, Heifetz, Lurie, Sheehan, Reby & Chervitz, St. Louis, Mo.

Barry L. Springel, of Jones, Day, Reavis & Pogue, Cleveland, Ohio, argued, for defendant-appellee. With him on brief, were Kenneth R. Adamo and Robert C. Kahrl, of Jones, Day, Reavis & Pogue. Of counsel was the law firm of Kenyon & Kenyon, New York City.

Before MARKEY, Chief Judge, BENNETT, and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

KangaROOS U.S.A., Inc. appeals the partial summary judgment of the United States District Court for the Southern District of New York, holding U.S. Patent No. 4,384,414 (the '414 patent), invention of Robert J. Gamm entitled "Athletic Shoe Pocket", unenforceable on the ground of fraud or inequitable conduct in the prosecution. On the basis that a summary proceeding was inappropriate in the circumstances here presented, we vacate the judgment and remand for further proceedings.

## The Issue

The facts and law are fully stated in the district court's Opinion and Order dated April 27, 1984 as amended[1]. The conduct on which the summary adjudication was based arose from the assertion on behalf of Gamm, in order to antedate the Gulbransen reference cited during prosecution of the application that led to the '414 patent, of entitlement under 35 U.S.C. § 120 to the priority date of design patent application Serial No. 938,098. This priority claim was unchallenged by the Examiner. Thus there was removed as prior art an intervening reference on which the examiner had based rejections under 35 U.S.C. §§ 102 and 103. The district court described the issue before it as:

> whether the making of a clearly improper claim that a later application is entitled to the benefit of the filing date of an earlier application, in order to overcome the most pertinent prior art reference against the later application, which the PTO examiner could and should have

---

1. *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 585 F.Supp. 1516, 222 USPQ 703 (S.D.N.Y.1984).

checked but obviously did not, constitutes fraud or inequitable conduct which renders the patent issued on the later application invalid or unenforceable.

585 F.Supp. at 1521–22, 222 USPQ at 708. The district court, in granting summary judgment, refused KangaROOS' request to present evidence on the applicant's intent in making the priority claim, stating:

> It is inconceivable that any evidence which might be adduced at a trial could alter this conclusion.

585 F.Supp. at 1529–30, 222 USPQ at 714.

The primary question raised by KangaROOS on appeal is whether there were genuine issues of material fact such that summary judgment as a matter of law was improperly granted. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 219 USPQ 13 (Fed.Cir.1983); Fed.R.Civ. Proc. 56(c). On motion for summary judgment the district court must view the evidence in the light most favorable to the party against whom the summary judgment is directed, and reasonable inferences of fact must be drawn in favor of the non-movant. *See United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The district court observed that the facts of patent prosecution as contained in the record of proceedings before the Patent and Trademark Office (PTO) are undisputed. This record consists of prosecution histories of the several patent applications, and shows KangaROOS' claim to the priority date of the design disclosure and the examiner's withdrawal of the Gulbransen reference. The court determined that the claim to § 120 priority was material to the allowance of the claims of the '414 patent in the form in which they were allowed, and concluded that the claim to priority was "so utterly devoid of merit that it could have resulted only from an intent to mislead or at least gross negligence". 585 F.Supp. at 1530, 222 USPQ at 714.

KangaROOS argues on appeal that the § 120 priority claim was not specious but

had support in the design disclosure, that the examiner should have checked it as required by the Manual of Patent Examining Procedure (MPEP), that there was no intent to deceive or mislead, and that the issue was not amenable to summary resolution in that the court improperly resolved the material issue of intent against the non-movant.

■ Intent to deceive is a necessary component of common law fraud, *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (Fed. Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). Good faith, intent to deceive, scienter, honest mistake are all questions of fact. *See Seven Cases of Eckman's Alternative v. United States*, 239 U.S. 510, 517, 36 S.Ct. 190, 193, 60 L.Ed. 411 (1916); *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185, 190 USPQ 273, 277 (8th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751, 192 USPQ 543 (1977); *Norton v. Curtiss*, 433 F.2d 779, 795–6, 167 USPQ 532, 545 (CCPA 1970).

Intent to deceive is also a material factor in the determination of "inequitable conduct" before the PTO, as this doctrine has evolved to enforce the high standards of conduct required of patent practitioners. As discussed in *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1363, 220 USPQ 763, 773 (Fed.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 95, 83 L.Ed.2d 41, 224 USPQ 520 (1984), the more material the misrepresentation before the PTO, the lower the burden of proving intent. However, intent remains a factor to be weighed in meeting the burden of proving inequitable conduct by clear and convincing evidence, and evidence on the factual question of intent can not be refused consideration.

A summary judgment of fraud or inequitable conduct, reached while denying to the person accused of the fraud or inequitable conduct the opportunity to be heard

on the issue, is a draconian result. "Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use". *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir.1967). Thus we have reviewed the issues material to the asserted misconduct, and the applicable law, to determine whether the judgment of fraud or inequitable conduct was properly granted summarily.

### Analysis

#### A.

There is no statutory prohibition against an applicant's reliance, in claiming priority under 35 U.S.C. § 120, on a disclosure in a design application if the statutory conditions are met. Of particular pertinence is the condition that the disclosure of the design application meet the requirements of the first paragraph of section 112 as applied to one or more claims of the continuation-in-part utility application. *Compare In re Berkman*, 642 F.2d 427, 429, 209 USPQ 45, 46 (CCPA 1981); *In re Bauman*, 683 F.2d 405, 409, 214 USPQ 585, 589 (CCPA 1982). The determination of whether any claim of the utility application is adequately supported in the prior design application depends on the facts of each case. In the case before us the district judge found that the design disclosure did not support the claims of the utility application against which he tested the design disclosure.

The district court discussed in thorough detail the entitlement of the claims of Gamm's *parent* utility application, Serial No. 107,092, to the priority date of Gamm's design application. The court did not discuss the claims of the divisional application that led to the '414 patent in relation to the disclosure of the design application.

It was only in prosecution of Gamm's divisional application that the § 120 priority was asserted, in order to overcome the intervening Gulbransen reference. We think the district court erred, not in its conclusion (which is apparently uncontested) that "the invention claimed in Gamm's parent utility application was not disclosed in his earlier design application in the manner required by 35 U.S.C. § 112", but in its premise that this was "[t]he critical issue of law". 585 F.Supp. at 1519–20, 222 USPQ at 706.

In our view, the critical issue of law was whether the invention claimed in Gamm's *divisional* utility application had no reasonable or justifiable basis for asserting the priority of the design application, such that there was clear and convincing evidence of fraud or inequitable conduct within the constraints and inferences that guide summary procedures. The claims of the *parent* application are not pertinent to this issue.

The role of the parent application with respect to the divisional was solely to provide the continuity of disclosure required by § 120, thereby connecting the divisional through a chain of co-pendency back to the design application. It is not material whether the parent could have relied on a § 120 priority claim, because no intervening reference was cited against the claims of the parent. On motion for summary judgment of invalidity of the divisional because of fraud in its prosecution, the critical issue was decided based on analysis of the claims of the wrong patent.

The claims in the divisional were different from those in the parent. Appellant directs us to claim 20 of the divisional application:

> 20. In a pocket for an athletic shoe and designed to hold smaller size personal items such as keys, coins, or the like as during jogging, comprising, said shoe having a quarter portion stitched to the sole shank at its lower extent, a pocket stitched to the quarter portion of the shoe along its front and back edges and being secured at its lower part proximate the location of the sole shank, said pock-

et having an opening therein for forming a pocket slot that is capable of being pulled open for insertion of the aforementioned items therein.

Appellant emphasizes that claim 20, and some of the other claims filed with the divisional application, were not limited to zipper closing or to stitching along the eyestay. Appellant thus charges error in the district court's statement that "[i]t appears equally improbable that Denk [Gamm's patent attorney] could have thought that Gamm's utility claims, containing such express requirements as a zipper closure and stitching 'substantially along the eyestay' were adequately supported by the earlier design application, whose entire disclosure consisted of drawings showing an altogether different construction". 585 F.Supp. at 1529, 222 USPQ at 713.

Appellant points out that the design drawings show no zipper, and the stitching is not limited to the eyestay, as illustrated in Figure 1 of the design application:

From this appellant argues that there was at least a reasonable basis for its patent attorney to have made the claim to § 120 priority.

The issue is not whether Gamm's divisional application is entitled to the priority date of the design application. The issue is whether Gamm's claim to the priority date constituted fraudulent or inequitable conduct according to law, and without resolving material issues of fact adverse to KangaROOS' position.

■ KangaROOS argues that Gamm's patent attorney Denk was wrongly denied the opportunity to testify as to his reasons for making the priority claim when Gulbransen was cited during prosecution of the divisional application. We have held that the court erred in considering the claims of the parent application in reaching its conclusion that the assertion of priority for the divisional claims was so unjustifiable that fraudulent intent must be presumed. Noticing the differences between the claims of the parent and the divisional

applications, we conclude that Denk's reasons, his intent in making the priority claim, must be considered by the trial court. *See Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185, 190 USPQ 273, 277 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751, 192 USPQ 543 (1977) (summary judgment is inappropriate where issues of fact, intent, good faith and other subjective feelings predominate).

### B.

After Gamm's attorney asserted the benefit of the filing date of the design application, the Gulbransen reference was withdrawn by the examiner. Manual of Patent Examining Procedure § 202.02 (4th ed. 1979) states that:

The inclusion of parent or prior application information in the heading does not necessarily indicate that the claims are entitled to the benefit of the earlier filing date.

Manual of Patent Examining Procedure § 201.08 (4th ed. 1979) requires the examin-

er to verify the applicant's entitlement to § 120 priority when such is relied on for the purpose of antedating a reference. KangaROOS argues that it is neither fair nor correct to penalize the applicant if the examiner failed to carry out this responsibility.

■ The district court did not agree; nor do we. If the claim for priority met the elements of fraud, or was so grossly negligent as to support an inference of fraud or inequitable conduct, lapse on the part of the examiner does not excuse the applicant. *See Rohm & Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556, 1573, 220 USPQ 289, 302 (Fed.Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

The district court found that "it is obvious now and must have been equally obvious to Denk at the time, that such a determination [of entitlement to § 120 priority] was somehow omitted in this instance". 585 F.Supp. at 1521, 222 USPQ at 707. This finding imputed culpable intent to Denk. The court concluded that Denk intended to take improper advantage of an obvious omission by the PTO, and denied Denk the opportunity to testify on the issue.

There is no reprieve from the duty of square dealing and full disclosure that rests on the patent practitioner in dealings with the PTO. We agree with the district court that this duty is not done by one who knowingly takes advantage of an error by the PTO. KangaROOS' defense is that even if Denk was wrong in his belief that he was entitled to § 120 priority, he did not fraudulently intend to deceive or mislead the examiner.

■ The state of mind of one making representations is an element of fraud. *Norton v. Curtiss*, 433 F.2d 779, 795, 167 USPQ 532, 545 (CCPA 1970). Intent to mislead or deceive is a factual issue that, if contested, is not readily determined within the confines of Fed.R.Civ.Proc. 56. *See*

*Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185, 190 USPQ 273, 277 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751, 192 USPQ 543 (1977); *Louis Schlesinger Co. v. Kresge Foundation*, 388 F.2d 208, 212 (3d Cir.1968), *cert. denied,* 391 U.S. 934, 88 S.Ct. 1847, 20 L.Ed.2d 854 (1968); 6-Pt. 2 J. Moore, J. Wicker, Moore's Federal Practice ¶ 56.17[27] (2d ed. 1985). As the district court said:

> Either fraud or inequitable conduct must be proved by clear, unequivocal and convincing evidence and the party asserting it carries a heavy burden of persuasion. *Rohm & Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556, 1572, 220 U.S.P.Q. 289, 302 (Fed.Cir.1983), *cert. denied,* [—— U.S. ——] 105 S.Ct. 172 [83 L.Ed.2d 107] (1984); *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1151, 219 USPQ 857, 861 (Fed.Cir.1983); *Norton v. Curtiss,* 433 F.2d 779, 797, 167 USPQ 532, 546–47 (CCPA 1970).

585 F.Supp. at 1524, 222 USPQ at 709.

The district court observed that proof of intent or scienter is often difficult, and that it may be sufficient to show "the *fact* of misrepresentation coupled with proof that the party making it had knowledge of its falsity". (Emphasis in original.) 585 F.Supp. at 1527, 222 USPQ at 712. We discern no error in the district court's analysis of the law; we determine only whether the district court erred in deciding the material fact of intent or knowledge of falsity, adversely to the non-movant, on summary judgment.

The district court recognized that "it is necessary that there be some element of wrongfulness, willfulness, or bad faith.... Hence mere negligent omissions or misstatements to the Patent Office do not provide sufficient basis for a finding of fraud". 585 F.Supp. at 1527, 222 USPQ at 712. Appellant protests that Denk believed that he was entitled to the priority of the design application and that at most Denk was negligent or had made an error in good faith.

Although the intent element of fraud or inequitable conduct may be proven by a showing of acts the natural consequences of which were presumably intended by the actor, this requires the factfinder to evaluate all the facts and circumstances in each case. *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151, 219 USPQ 857, 861 (Fed.Cir. 1983). Such an evaluation is rarely enabled in summary proceedings. We do not here apply the balancing test between materiality and intent discussed in *American Hoist* or express any view on whether KangaROOS may have, on the totality of the evidence, be found to have breached its duty of candor. We merely hold that the intent of the actor is a factor to be considered in judicial determination of fraud or inequitable conduct, and that intent was not on this record amenable to summary resolution. Despite the district court's statement that it was "inconceivable" that KangaROOS could adduce evidence to change the court's conclusion, the weight of authority requires that KangaROOS not be denied that opportunity.

The Supreme Court said in *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) "summary procedures should be used sparingly . . . where motive and intent play leading roles. . . ." In *Empire Electronics Co. v. United States*, 311 F.2d 175, 179–180 (2d Cir.1962) the court reversed a grant of summary judgment in a contract dispute where the state of mind of the parties was at issue, and required that the issue be tried. In *Xerox Corp. v. Dennison Manufacturing Co.*, 322 F.Supp. 963, 964, 168 USPQ 700, 701–02, (S.D.N.Y.1971), the defendant sought summary judgment by reason of plaintiff's alleged fraud in prosecuting the patent at suit; the court cited *Preston v. United States Trust Co. of New York*, 394 F.2d 456, 460 (2d Cir.1968), *cert. denied*, 393 U.S. 1019, 89 S.Ct. 624, 21 L.Ed.2d 563 (1969); *Louis Schlesinger Co.*

*v. Kresge Foundation*, 388 F.2d 208, 212 (3d Cir.1968), *cert. denied*, 391 U.S. 934, 88 S.Ct. 1847, 20 L.Ed.2d 854 (1968); and *Poller, supra*, for the premise that "summary judgment may not be used to determine intent", and held that a defense of fraud presents at best a genuine issue as to state of mind which bars summary judgment. This court observed in *Albert v. Kevex Corp.*, 729 F.2d 757, 763, 221 USPQ 202, 207, *reh'g denied*, 741 F.2d 396, 223 USPQ 1 (Fed.Cir.1984) that intent is a factual matter rarely free from dispute; and as intent was found critical to a judgment of fraudulent concealment, this court held improper the cutting off of Albert's right to trial on the issue.

■ We conclude that the matter of KangaROOS' intent to deceive or mislead is a genuine issue of material fact, and that the court erred in summarily drawing factual inferences adverse to appellant, while denying appellant the opportunity to testify on the issue.

### C.

Caldor argues that KangaROOS was not timely in its proffer to the district court of evidence supporting its position that summary judgment was inappropriate.[2] KangaROOS responds that the issues that were raised by Caldor in its motion for summary judgment are different from that on which the court based its decision, and thus KangaROOS' evidence could not have been presented in response to Caldor's motion.

Caldor had stated in its motion that no subsequent patent application could ever be entitled to the priority of the design application because the design application had been abandoned before KangaROOS had overcome the examiner's rejection for failure to comply with 35 U.S.C. § 112. KangaROOS had refuted this argument as an incorrect statement of the law; the district

---

**2.** This court will not consider on appeal evidence not before the district court, and to that extent Caldor's motion to this effect has been granted.

**1578**

court did not discuss it, and authority does not support it.

Caldor also relied, in its motion alleging fraud in the procurement, on the amendment filed by KangaROOS which erroneously identified the design application as an issued patent rather than an abandoned application. This was expressly rejected by the district court as a basis for its conclusion of fraud in the prosecution.

Caldor's motion also pointed to KangaROOS's "lack of candor" in its designation of the '414 patent as both a divisional and a continuation-in-part. Caldor further asserted that the divisional application could not be a continuation-in-part of the design application because the design application was abandoned before the divisional was filed. The district court did not comment in its decision on either of these assertions, neither of which was supported by authority, and both of which KangaROOS refuted as incorrect statements of the law.

Thus KangaROOS, in countering Caldor's motion for summary judgment, responded to all of the arguments raised by Caldor. In its "Objections to Defendant Caldor, Inc.'s Statement of Facts Pursuant to Local Rule 3(g)" KangaROOS stated that the only genuine material factual issue raised by Caldor's motion was whether Denk intentionally misstated that the design application had become an issued patent in order to mislead the examiner. This point, as we have noted, was resolved by the court in KangaROOS' favor, as "more probable that this was merely a clerical error". 585 F.Supp. at 1521, 222 USPQ at 707–8.

Thus none of the issues raised in Caldor's motion was relied on in the court's decision. "[T]he Federal Rules do not contemplate that a court may dispose of a cause by summary judgment, when the basis for the judgment was not raised by the movant with sufficient precision for the nonmovant to respond". *Cooper v. Ford Motor Co.*, 748 F.2d 677, 680, 223 USPQ 1286, 1288 (Fed.Cir.1984).

We conclude that KangaROOS had inadequate notice of the issue on which the district court based its summary decision. The evidence subsequently tendered by KangaROOS might not have changed the result—the district court said nothing could change its result—but in accordance with the Federal Rules of Civil Procedure, KangaROOS is entitled to be heard on these issues of material fact.

For the several reasons discussed, the partial summary judgment of fraud or inequitable conduct in the procurement of U.S. Patent 4,384,414 is vacated, and remanded for trial.

VACATED and REMANDED.