**ELKHART BRASS MANUFACTURING COMPANY, INC., Plaintiff,**

v.

**TASK FORCE TIPS, INC., Defendant.**

No. 3:93cv732 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

July 12, 1994.

Steven K. Like, Warrick Weaver and Boyn, Elkhart, IN, Terence J. Linn, Barry C. Kane, Price Heneveld Cooper DeWitt and Litton, Grand Rapids, MI, for plaintiff.

Edward W. Hardig, Hardig Lee and Groves, South Bend, IN, Donald J. Brott, Chicago, IL, Edward M. O'Toole, Jeffry W. Smith, Jane Choi Forest, Marshall O'Toole Gerstein, Murray and Borun, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

#### I. Procedural History

On October 15, 1993, the plaintiff, Elkhart Brass Manufacturing, Inc., ("Elkhart") filed its complaint with this court, alleging that the defendant, Task Force Tips, Inc.,

("TFT"), is infringing Patent No. 4,674,686. The plaintiff also made a jury demand. On November 2, 1993, the defendant filed its answer and counterclaim. In its counterclaim, the defendant demands a declaratory judgment of patent invalidity and noninfringement. The parties agree that this court has jurisdiction pursuant to 28 U.S.C. § 1338, and venue is proper under 28 U.S.C. § 1391 and 1400. This court granted the parties' motions for protective order on December 3, 1993. On April 18, 1994, the plaintiff filed its motion for partial summary judgment on defendant's affirmative defense and counterclaim. On April 22, 1994, the defendant filed its motion for summary judgment. On May 2, 1994, the defendant filed its cross motion for summary judgment of unfair competition. This court has jurisdiction over the unfair competition claim pursuant to 28 U.S.C. 1338(b). Oral argument was heard in this court in South Bend, Indiana, on May 19, 1994.

## II. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir.1993).

A thorough discussion of Rule 56 by the Supreme Court of the United States can be found in a trilogy of cases decided in 1986. *See, Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)[1]; and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A material question of fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991), or upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992). "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990).

During its analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–255, 106 S.Ct. at 2512–2514.

The 1986 Supreme Court trilogy was recently re-examined in *Eastman Kodak v. Image Technical Services*, —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Kodak* is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

---

1. For the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

## III. Issues Presented

As an initial matter, the plaintiff argues that this court should deny the defendant's motion for leave to amend its answer and counterclaim. The plaintiff alleges infringement of its letters patent No. 4,674,686, issued to James M. Trapp on June 23, 1987, for his "portable fire apparatus monitor." Complaint at 1. The defendant has counterclaimed, in addition to requesting a declaratory judgment on the same claim, that the plaintiff's inequitable conduct renders the patent invalid. Further, the defendant alleges common law unfair competition as a result of the plaintiff's notice to customers.

## IV. Motion for Leave to Amend Answer and Counterclaim

■ The plaintiff argues that the defendant's motion for leave to amend its answer and counterclaim to include the allegations of inequitable conduct and unfair competition should be denied. Plaintiff's Memorandum in Opposition to Defendant's Motion for Leave to Amend its Answer and Counterclaim at 1. The plaintiff argues that the defendant's second counterclaim for unfair competition is insufficient, as the "conclusory allegations are not in any way supported by the underlying evidence relied upon in support of Defendant's Motion to Amend." *Id.* at 4. Further, the plaintiff argues that the defendant has failed to plead its claims of plaintiff's alleged inequitable conduct with particularity as required by Fed.R.Civ.P. 9(b). *Id.* at 2–3. Elkhart also claims that the inequitable conduct defense and counterclaim is all too automatic in patent cases, including this one. The defendant acknowledges this concern in its brief, and argues that its claim is based on facts as alleged. In *Burlington Industries, Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422, Judge Mayer expressed exasperation with this practice:

[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps. They get anywhere with the accusation in but a small percentage of the cases, but

such charges are not inconsequential on that account. The destroy the respect for one another's integrity, for being fellow members of an honorable profession, that used to make the bar a valuable help to the courts in making a sound disposition of their cases, and to sustain the good name of the bar itself. A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the Patent Office" is a negative contribution to the rightful administration of justice. The charge was formerly known as 'fraud on the Patent Office,' a more pejorative term, but the change of name does not make the thing itself smell any sweeter. *Id.*

While this court takes the same dim view of defendants who use this defense as a tactical device, this court finds that this defendant has not demonstrated bad faith or undue delay in this case. Further, and without engaging in a drawn-out analysis of whether Fed.R.Civ.P. 9(b) applies to the issue of inequitable conduct, the court finds that this argument is quibbling; the defendant has laid out its factual background for both claims. Thus, the defendant's motion to amend its answer and counterclaim is **GRANTED.**

## V. Discussion

### A. *Inequitable Conduct*

Both the plaintiff and defendant have filed for summary judgment, in whole or part, on various issues. As an initial matter, this court addresses the application of Fed. R.Civ.P. 56 in patent cases:

The summary judgment procedure of rule 56, Fed.R.Civ.P., applies to actions involving patents and the problem, as in other civil actions, is to determine whether there is any triable issue of fact or whether the movant is entitled to judgment as a matter of law. 6 Moore's Federal Practice ¶ 56.17[44], at 56–992 to 56–993 (2d ed. 1980). Thus, summary judgment may be rendered on the issues of validity and enforceability where, from the pleadings and extraneous materials, only a question of law emerges and the court can say that the patent is invalid or unenforceable. *Id.* at

56–993. However, a patent case is not ripe for summary judgment on the issues of validity or enforceability where the technical aspects are not readily comprehensible by one unskilled in .the art, where the record is inadequate to decide the issue, where there is a need for expert testimony, where the expert testimony submitted is conflicting, or where there is some other genuine issue of material fact. *Id.* at 56–998 to 56–999. Furthermore, the court should not resolve a genuine issue of credibility on a motion for summary judgment. *Id.* ¶ 56–15[4]. at 56–519.

*Acoustiflex Corp. v. Owens–Corning Fiberglas Corp.,* 572 F.Supp. 936, 937 (N.D.Ill.1983).

The defendant bases its assertion of patent invalidity on alleged inequitable conduct by the plaintiff. Earlier analyses of patent invalidity labelled such conduct as "fraud on the PTO." In his seminal opinion, Judge Markey distinguished "fraud" from "inequitable conduct:"

> Because the "fraud" label can be confused with other forms of conduct, this opinion avoids that label and uses "inequitable conduct" as a more accurate description of the proscribed activity, it being understood that the term encompasses affirmative acts of commission, *e.g.,* submission of false information, as well as omission, *e.g.,* failure to disclose material information.

*J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.* 747 F.2d 1553, 1559 (Fed.Cir.1984).

■ As an initial threshold, this court notes that while summary judgment is appropriate in patent cases, granting summary judgment on issues of inequitable conduct must be approached cautiously:

> The material facts upon which a holding of inequitable conduct rests relate to both the intent of the actor and the materiality of the information. These two factors are considered in light of each other. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1363, 220 USPQ 763, 773 (Fed.Cir.) (citing 37 C.F.R. 1.56(b), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984)). If the facts of materiality or intent are reasonably disputed, the issue is not amenable to summary disposition. *KangaROOS U.S.A., Inc.* [v. Caldor,

Inc.], 778 F.2d 1571, 1577, 228 USPQ 32, 36 (Fed.Cir.1985).

*Baker Oil Tools, Inc. v. Geo Vann, Inc.,* 828 F.2d 1558, 1565–66 (Fed.Cir.1987).

Notwithstanding this standard, the defendant has a tough row to hoe on this issue. Summary judgment cannot be lightly granted on the issue of inequitable conduct: "A *summary judgment* that a reputable attorney has been guilty of inequitable conduct, over his denials, ought to be, and can properly be, rare indeed." *Burlington Industries,* 849 F.2d at 1422.

■ The defendant conceded in oral argument that its burden in proving inequitable conduct is heavy; it bears the burden of establishing by clear and convincing evidence that inequitable conduct on the part of the plaintiff occurred during the application process. Judge Markey, in *J.P. Stevens,* 747 F.2d 1553, found the PTO standard the appropriate starting point, since it clarifies how business with the PTO should be conducted:

> PTO Rule 1.56(a), *i.e.,* whether there is a substantial likelihood that a reasonable examiner would have considered the omitted reference or false information important in deciding whether to allow the application to issue as a patent.... Under the standard, a reference that would have been merely cumulative is not material.

*Id.* at 1559–60 (citations omitted). This case also defined the standard of threshold intent in inequitable conduct issues:

> That intent need not be proven with direct evidence. *Hycor* [Corporation v. Schlueter] 740 F.2d [1529] at 1540, 222 USPQ [1529] at 561. It may be proven by showing acts the natural consequences of which are presumably intended by the actor. *American Hoist,* 725 F.2d at 1363, 220 USPQ at 773; *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1151, 219 USPQ 857, 862 (Fed.Cir.1983). Proof of deliberate scheming is not needed; gross negligence is sufficient. *Hycor,* 740 F.2d at 1540, 222 USPQ at 561. Gross negligence is present when the actor, judged as a reasonable person in his position, should have known of the materiality of a withheld reference. *Driscoll v. Cebalo,* 731 F.2d [878] at 885,

221 USPQ [745] at 751 [(Fed.Cir.1984)]; *Kansas Jack, Inc v. Kuhn,* 719 F.2d at 1152, 219 USPQ at 862. On the other hand, simple negligence, oversight, or an erroneous judgment made in good faith, is insufficient. *Orthopedic Equip. Co. v. All Orthopedic Appliances,* 707 F.2d 1376, 1383, 217 USPQ 1281, 1286 (Fed.Cir.1983). Once the thresholds of materiality and intent are established, the court must balance them and determine as a matter of law whether the scales tilt to a conclusion that inequitable conduct occurred. *American Hoist,* 725 F.2d at 1364, 220 USPQ at 774. If the court reaches that conclusion, it must hold that the patent claims at issue are unenforceable.

*J.P. Stevens,* 747 F.2d at 1560. It is TFT in this case that must prove invalidity:

> A patent is presumed valid, and the burden of persuasion to the contrary is and remains on the party asserting invalidity. In addition, the party asserting invalidity also bears the initial procedural burden of going forward to establish a legally sufficient *prima facie* case of invalidity. If this burden is met, the party relying on validity is then obligated to come forward with evidence to the contrary. Before rendering its judgment, the court must determine whether "all of the evidence establishes that the validity challenger so carried his burden as to have persuaded the decision-maker that the patent can no longer be accepted as valid."

*Ralston Purina Co. v. FAR–MAR–CO, Inc.,* 772 F.2d 1570, 1573 (Fed.Cir.1985) (citations omitted).

In 1987, however, the Federal Circuit reanalyzed the culpability prong of the inequitable conduct doctrine. In *FMC Corp v. Manitowoc Co, Inc.,* 835 F.2d 1411 (Fed.Cir. 1987), Judge Markey established a more precise standard than "gross negligence:"

> To be guilty of inequitable conduct, one must have intended to act inequitably. Thus, one who alleges a "failure to disclose" form of inequitable conduct must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art of information and of its

materiality; and (3) failure of the applicant to disclose the art or information resulting from an *intent to mislead* the PTO.

*Id.* at 1415.

In this case, the defendant is alleging that Elkhart withheld material prior art from the patent office. There is debate between the parties whether the plaintiff knew how material it was and whether it intentionally withheld this art. The next logical inquiry is whether the plaintiff knew that it would not be granted a patent for its hose coupling if the patent examiner had been presented with the other types of couplings at issue: the British Instantaneous Coupling (BIC), the Jones Coupling and the Darley snap connector. Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment of Inequitable Conduct at 4.

Without wading into a detailed comparison of the parties' arguments, this court finds that the facts of this case are not ripe for summary judgment. The defendant has not established its claim by clear and convincing evidence. Material facts are at issue as to the plaintiff's intent and the couplings' materiality. Thus, the court **DENIES** all motions for summary judgment on the issue of inequitable conduct.

**B.** *Bifurcation of Inequitable Conduct Issue*

▮ The plaintiff requests, in the alternative, that the inequitable conduct issue be bifurcated and tried to the bench prior to the jury trial. In *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209 (Fed.Cir.1987), as in the case before this court, a jury had been requested; however, the judge separated the inequitable conduct issue from the jury trial on infringement. In *Gardco,* Judge Markey held that "[s]uch a separation is precisely the type contemplated by Rule 42(b) and does not run afoul of the Seventh Amendment." *Id.* at 1213.

TFT argues that "the request is premature, and that the request for bifurcation has not been made by way of a *formal motion.*" Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment of Inequitable Conduct at 19. This

case, as evidenced in the conclusion of this memorandum, has more than its fair share of motions so far. This judge can, however, and does, bifurcate the inequitable conduct issue, to be followed by a jury trial on remaining issues. Thus, the plaintiff's request for bifurcation of the inequitable conduct issue is **GRANTED.**

## C. *Unfair Competition Claim*

█ The plaintiff alleges that TFT's unfair competition claim arises under Indiana law, not federal law, and that TFT has not specified the type of Indiana common law unfair competition action it relies on. Plaintiff's Reply Memorandum at 12. In this case, the plaintiff has not specified federal protection, and, as this judge wrote in a trademark case with claims of unfair competition:

> In analyzing plaintiff's state law claim of unfair competition, this court must look to Indiana law because this cause of action arose in Indiana.

*General Elec. Co. v. Speicher,* 676 F.Supp. 1421 (N.D.Ind.1988). The obvious point the plaintiff is making is that, under Indiana law, the defendant is hard pressed to make a claim under tortious interference with contract or "malicious interference with TFT's advantageous business relationships." Defendant's Memorandum in Support of its Motion to Amend.

TFT argues that Elkhart's notification of the pending lawsuit constitutes unfair competition. TFT claims that Elkhart has threatened lawsuits it would not carry out, thereby going beyond the perimeter of permissible notification. Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment at 17–18. This position is certainly supported by *Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700 (Fed.Cir. 1990), which held that:

> Infringement notices have been enjoined when the patentee acted in bad faith, for example by making threats without intending to file suit, *Betmar Hats, Inc. v. Young America Hats, Inc.,* 116 F.2d 956, 48 USPQ 266 (2d Cir.1941); or when the patentee had no good faith belief in the validity of its patent, *Magnetic Engineering &*

*Mfg. Co. v. Dings Mfg. Co,* 178 F.2d 866, 84 USPQ 105 (2d Cir.1950).

*Id.* at 710. The plaintiff has attempted here to make out just such a case. The defendant first claims that Elkhart does not present evidence of its good faith in distributing these notices, and then departs from the premise that notices of infringement are presumed made in good faith. Thus, the burden is on TFT to demonstrate that Elkhart acted in bad faith, and the defendant claims that it has submitted sufficient evidence to overcome this presumption.

This court has studied "Product Update," the one-page document that Elkhart distributed to its distributors and, on down the line, to the subsequent customers. Product Update (attached as Appendix A). Specifically, the defendant has objected to the scope of the distribution of this document:

> The "Product Update" was indiscriminately distributed to distributors, dealers and end users. *See Int'l Industries & Developments, Inc. v. Farbach Chemical Co.,* 241 F.2d 246, 248 (6th Cir.1957) (where bad faith found when patentee sent notices indiscriminately to all members of the trade). This coupled with the fact that Elkhart had *no* intention of suing anyone other than TFT reveals that Elkhart's motive in sending these notices was *not* to protect its patent rights. Rather, Elkhart intended to compete unfairly with TFT by interfering with the continuing and prospective relationships between TFT, and its distributors and end users.

*Id.* at 18. This assertion does not rise to the level of informing the whole trade, nor is this court persuaded that Elkhart had no right to inform those selling the allegedly infringing hose couplings of the suit. Likewise, the court finds the defendant's arguments that the "Product Update" is deficient in fulfilling the requirements for notice lacking merit. This court finds, that notwithstanding which tort law would apply, the analysis must start with the presumption that the notification was valid, and the plaintiff's right to notification:

> [T]he district court's stated grounds can not support an injunction against giving notice to those directly involved in the

asserted infringement. The court's discretionary authority does not, under these circumstances, extend to requiring the patentee to remain silent, even as it publicly litigates issues of direct concern to the objects of the intended notice. *See generally Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 14 USPQ2d (Fed.Cir.1990) (vacating preliminary injunction against filing infringement suits). *Mallinckrodt*, 976 F.2d at 710. The defendant argues that the notification entailed in this case extended beyond the group of possible defendants. Specifically, and by elaborate argument, the defendant claims that since Elkhart would not benefit from bringing suit against the customers of this product, its notification constitutes a mere threat. As quoted in *Mallinckrodt*, it is "not an actionable wrong for one in good faith to make plain to whomsoever that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are." *Mallinckrodt*, 976 F.2d at 710, quoting *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314, 85 USPQ 285, 287 (2d Cir.1950). The defendant relies on *Coal Processing Equipment, Inc. v. Campbell*, 578 F.Supp. 445, 464 (S.D.Ohio 1981), to further illustrate notifications that exceed the good faith belief:

> [T]he letters are neither specific as to the equipment accused or the exact nature of the alleged infringement. The letters did not contain enough information to permit substantiation or verification by the addressees. Further, there was no evidence other than the letters that Dr. Campbell intended to bring suit.

*Id.* The defendant's efforts to analogize this case fail; in its analysis of showing bad faith, the court in *Coal Processing* noted that the plaintiff failed to call a material witness; the plaintiff interfered directly with a contract whose social value outweighed his patent rights, and the record reflected a history of ill will. *Id.* at 464. The court elaborated on the factual occurrences of ill will and bad faith. This court does not find any such evidence here. The plaintiff has the presumption of good faith as to his infringement filing, and the defendant has not presented evidence to overcome this presumption. Having found no bad faith, this court does not need to wade into whether the higher standard under Indiana law has been met.

Thus, this court **GRANTS** the plaintiff's partial summary judgment motion on the issue of unfair competition, and **DENIES** the defendant's cross-motion on the same.

## V. Conclusion

Based on the above analysis, the defendant's motion to amend its answer and counter claim is **GRANTED.** The defendant's motion for partial summary judgment on its affirmative defense of inequitable conduct as well as its counterclaim for declaratory judgment on the issue of inequitable conduct are **DENIED.** The plaintiff's motion for partial summary judgment on defendant's affirmative defense and counterclaim is **DENIED.** The defendant's cross-motion for summary judgment of unfair competition is **DENIED.** The plaintiff's motion for summary judgment of unfair competition is **GRANTED.** The plaintiff's request for bifurcation and bench trial of the inequitable conduct issue is **GRANTED.** As to the issues beyond this threshold bench trial, the defendant's motion for summary judgment of noninfringement and failure to comply with best mode requirement is **DENIED.** The bench trial on the issue of inequitable conduct is set for August 25, 1994, at 9:30 a.m.

APPENDIX A

# PRODUCT UPDATE

## Elkhart Brass Files Patent Infringement Lawsuit Against TFT

Elkhart, Indiana...

For nearly a century, Elkhart Brass has been a pacesetter in the design and manufacture of fire fighting and fire protection equipment. Among the company's numerous innovations are the industry's first fog nozzle and the versatile, and patented, STINGER® portable monitor.

To answer your many questions and concerns about the similarities of Task Force Tips' Crossfire monitor to the STINGER® we thought you should be aware that Elkhart Brass has filed suit in the United States District Court for the Northern District of Indiana asserting patent infringement by Task Force Tips (TFT), according to an announcement by Tony Ashbaugh, Vice President, Sales.

It is important to understand that, should the Crossfire monitor be found to be an infringement as alleged in the complaint, not only would TFT be liable as the manufacturer of Crossfire, but those who sell or use this device would also be in violation of the patent laws.

"The lawsuit asserts that in introducing TFT's new Crossfire monitor, TFT infringed Elkhart Brass's patent rights which protect our STINGER® monitor, under United States Patent No. 4,874,686," Ashbaugh explained. "The patent law, 35 U.S.C. 271, provides that not only is the manufacturer of an infringing device a direct infringer, but those who sell or use an infringing device are direct infringers as well," he added. "At Elkhart Brass, we believe the STINGER® is America's best, and we're standing behind it all the way."

There's only one STINGER® brand monitor and it's only from Elkhart Brass. If you have any questions about this action, don't hesitate to call Tony Ashbaugh.

Elkhart Brass Mfg. Co., Inc.
P.O. Box 1127
Elkhart, IN 46515
(219) 295-8330
Fax: 219-293-9914

DEFENDANT'S EXHIBIT NO. 106