CHIRON CORPORATION, Plaintiff,

v.

ABBOTT LABORATORIES, Defendant.

No. C–93–4380 MHP.

United States District Court,
N.D. California.

June 24, 1994.

Harold McElhinny, Michael Jacobs, Morrison & Foerster, San Francisco, CA, for plaintiff.

Curtis Karnow, Stephen Lewis, Landels, Ripley & Diamond, San Francisco, CA, for defendant.

***OPINION***

PATEL, District Judge.

Plaintiff Chiron Corporation ("Chiron") brought this action against defendant Abbott Laboratories ("Abbott") alleging patent infringement. Now before this court is Chiron's motion to strike Abbott's fourth affirmative defense of inequitable conduct. Having considered the parties' submissions and arguments, the court now enters the following memorandum and order.

*BACKGROUND*

After the first documented cases of Acquired Immune Deficiency Syndrome ("AIDS") occurred in the United States in 1981, researchers identified the Human Immunodeficiency Virus ("HIV") as its primary cause. Antibody tests called "immunoassays" were developed thereafter, in order to detect the presence of antibodies to HIV in human blood. Although researchers first explored the use of natural viral proteins in immunoassays, this process was expensive and also exposed laboratory workers to risk of infection from handling the live virus. Re-

searchers therefore began looking into recombinant technology, which allows researchers to create portions of HIV proteins for use in the immunoassays. The proteins may be created in high quantity and at low cost with no risk of infection to laboratory workers.

On October 20, 1992, U.S. Patent No. 5,156,949 issued to Chiron. The patent relates to immunoassay products and methods of use for particularly useful portions of HIV proteins. On December 13, 1993, Chiron filed this action claiming that Abbott's HIV diagnostic tests infringe claims of the '949 patent.

In its answer Abbott asserted several defenses including, as its fourth affirmative defense, that the '949 patent is unenforceable under the doctrine of inequitable conduct. After Chiron filed a motion to strike the defense for lack of specificity but before the hearing on the motion, Abbott amended its answer to allege the inequitable conduct in more detail. Abbott asserted that Chiron acted inequitably by filing an affidavit with the Patent and Trademark Office (PTO) that was deceptive and misleading with regard to the "state of the art" of the technology for which the patent was sought.

Chiron contends that Abbott's amended answer still does not plead inequitable conduct with the requisite particularity and asks the court to strike the defense.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

## DISCUSSION

■■■ According to the doctrine of inequitable conduct, a patent is rendered unenforceable if the patent applicant acted inequitably before the PTO in prosecuting the patent. *Kingsdown Medical Consultants,*

*Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). Inequitable conduct encompasses deception, fraud, or failure to disclose material information. *Id.* A threshold issue before this court is whether the requirement of Federal Rule of Civil Procedure 9(b), which demands particularity in pleading fraud, applies to allegations of inequitable conduct before the PTO.

### I. *The Applicability of Rule 9(b)*

The pleading provisions in the Federal Rules of Civil Procedure promote simplicity of procedure and facilitate the speedy determination of litigation on the merits. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). Pleadings are meant to "inform a party of the claims and defenses being asserted against him and the relief demanded by his adversary.... [T]he only function left exclusively to the pleadings by the federal rules is that of notice." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1182 and 1202 (2d ed. 1990). Accordingly, Federal Rules of Civil Procedure 8(b), (c) require only that a party set forth its defenses "in short and plain terms."

Fraud defenses, however, are also governed by Rule 9(b), which states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule "prevents the filing of a complaint as a pretext for the discovery of unknown wrongs and protects potential defendants ... from the harm that comes from being charged with the commission of fraudulent acts." *Semegen v. Weidner*, 780 F.2d 727, 731–35 (9th Cir.1985). It is also designed to give an opposing party notice of particular misconduct. *Id.; United States ex rel. McCoy v. California Medical Review, Inc.*, 723 F.Supp. 1363, 1372 (N.D.Cal.1989).

Although the Federal Circuit has yet to squarely address whether Rule 9(b) applies to a defense of inequitable conduct, a plain reading of the Federal Rules, the weight of authority, and sound public policy all require that pleadings which allege inequitable conduct before the PTO comply with Rule 9(b).

Rule 9(b) makes no exceptions for affirmative defenses or particular types of fraud: "in *all* averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b) (emphasis added). Thus, Rule 9(b) does not, on its face, confine its commands to common law fraud, but instead encompasses all averments, including, by definition, inequitable conduct, which has been called "fraud on the patent office." *Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed.Cir.1988). Although the Federal Circuit has acknowledged that inequitable conduct is "broader than 'common law fraud'" and encompasses other inequitable conduct rendering the patent unenforceable, *see J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1559 (Fed.Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985), this technical distinction is not relevant to the question of how the affirmative defense must be pled. It is germane only to the issues of what elements must be established and what the legal consequences of the conduct are.

In any event, public policy considerations dictate that the affirmative defense of inequitable conduct be subject to Rule 9(b). The Federal Circuit has repeatedly expressed concern over the use of the inequitable conduct defense as "a magic incantation to be asserted against every patentee." *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed.Cir.1987). In one of its strongest statements, the court stated:

> [T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately perhaps. ... They destroy the respect for one another's integrity, for being fellow members of an honorable profession, that used to make the bar a valuable help to the courts in making a sound disposition of their cases, and to sustain the good name of the bar itself. A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the

Patent Office" is a negative contribution to the rightful administration of justice.

*Burlington Industries*, 849 F.2d at 1422.

The Federal Circuit's concern over the use of the inequitable conduct defense is justifiable, given the many dangers inherent in such a defense. These dangers are only heightened if parties are not held to Rule 9(b)'s pleading requirements. Defending against an allegation of inequitable conduct can consume enormous resources, particularly if the allegation fails to pinpoint the precise offending conduct. Furthermore, if the attorneys representing the party accused of inequitable conduct are the same attorneys who represented the client in the patent prosecution, then the party asserting inequitable conduct will often move to disqualify those attorneys. Specious allegations of inequitable conduct can thus be deployed as a delaying tactic, as an attempt to confuse the issues or mislead the court, or as a tool to generate more fees or make the case more expensive for an opponent to try or settle.

Vague allegations of inequitable conduct may also be the launching of a "fishing expedition," allowing the accuser to embark on wide-ranging discovery upon a thimble-full of facts. This is precisely the sort of tactical maneuvering that Rule 9(b) is designed to deter. *See Semegen*, 780 F.2d at 731.

The damage wrought by unfounded allegations of fraud is not limited to an advantage unfairly gained by one side. As the Federal Circuit has pointed out, the integrity of reputable attorneys, indeed of the bar *in toto*, is at stake. *See, Burlington Industries*, 849 F.2d at 1422. The reputations of respectable clients, eminent experts, and honest patent examiners may all be impugned by careless or malicious accusations of "fraud on the Patent Office."

The courts thus have a strong interest in weeding out allegations of inequitable conduct that are asserted in bad faith. Given the Federal Circuit's concern for allegations made "on the slenderest ground," *Burlington Industries, Inc.*, 849 F.2d at 1422, enforcing Rule 9(b)'s requirement that averments of fraud be pled with particularity is a simple, logical, and fair way to protect patent litigants. Not surprisingly, the majority of

courts that have addressed this issue have found, on similar grounds, that Rule 9(b) applies to the defense of inequitable conduct. *See IPPV Enterprises v. Cable/Home Communications,* 25 U.S.P.Q.2d (BNA) 1894, 1896, 1992 WL 454358 (S.D.Cal.1992); *accord Energy Absorption Systems, Inc. v. Roadway Safety Service, Inc.,* 28 U.S.P.Q.2d (BNA) 1717, 1993 WL 389014 (N.D.Ill.1993); *Sun–Flex Company, Inc. v. Softview Computer Products Corp.,* 750 F.Supp. 962 (N.D.Ill.1990); *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163 (E.D.N.Y.1988), *aff'd,* 870 F.2d 642 (Fed.Cir.1989); *Intel Corp. v. Hyundai Elecs. America, Inc.,* 692 F.Supp. 1113 (N.D.Cal.1987); *Micro Motion, Inc. v. Exac Corp.,* 112 F.R.D. 2 (N.D.Cal.1985).[1]

This court joins those courts in holding that Federal Rule of Civil Procedure 9(b) applies to a defense of inequitable conduct in a patent action.

## II. *Rule 9(b) As Applied To This Action*

■ The Ninth Circuit has attempted to strike a balance between the sometimes conflicting dictates of Rule 8, which requires brevity, and Rule 9, which requires specificity. The court has held that "[w]hile mere conclusory allegations of fraud are insufficient, statements of the time, place and nature of the alleged fraudulent activities are sufficient." *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987). More recently the Ninth Circuit has stated that " 'allegations of fraud [must be] specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.' " *Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir.1993) (quoting *Semegen,* 780 F.2d at 731).

Abbott's fourth affirmative defense (as amended) reads in full:

U.S. Patent No. 5,156,949 is unenforceable pursuant to the doctrine of inequitable conduct. In an effort to avoid the patent examiner's obviousness rejection, Chiron intentionally misled the examiner about the state of the art. In particular, on September 14, 1990, Dr. Kathelyn Sue Steimer swore to an affidavit containing information about the likelihood that recombinant antigens would be as effective as natural antigens when used in an HIV diagnostic assay. This affidavit was filed with the U.S. Patent Office, and was deceptive and misleading.

Jacobs Dec., Ex. C at 3. Although this answer designates one allegedly fraudulent document from the prosecution history, it fails to state specifically what part of that document is deceptive. Dr. Steimer's affidavit consists of seven pages and fifteen separately numbered paragraphs. Chiron has no way of knowing from the sparse accusation which of these paragraphs forms the basis for Abbott's accusations. Is it the conclusions Dr. Steimer draws, the facts on which she bases those conclusions, or some other specific statement in the affidavit? If a party alleging fraud "offers *no specific facts demonstrating wrongdoing* which [the other party] could deny or otherwise controvert," then it fails to plead the allegation with sufficient particularity under Rule 9(b). *Neubronner,* 6 F.3d at 672 (emphasis added).

■ In order to meet the requirements of Rule 9(b), Abbott must, at a minimum, specify the nature of the deception it alleges. This court has required that "allegations of fraud [be] specific enough to apprise defendants of the misconduct alleged.…" *United States ex rel. McCoy,* 723 F.Supp. at 1372. If Abbott is accusing Chiron of deliberately misleading the patent examiner about the state of the art through Dr. Steimer's affidavit, Chiron must be afforded fair notice as to

1. A recent district court decision declined to require a defendant to plead fraud with particularity with regard to defenses enumerated in 35 U.S.C. § 282; however, it is unclear whether the affirmative defense of inequitable conduct was contemplated in the court's reasoning. *Quantum Corp. v. Western Digital Corp.,* 10 U.S.P.Q.2d (BNA) 1712, 1712–13, 1988 WL 391517 (N.D.Cal.1988) (Aguilar, J.). Although it appears that inequitable conduct was indeed at issue in that case, the author of that opinion had previously found that "fraud on the Patent Office is included within [Rule 9(b) ]" and gave no indication in the later ruling of a change in that position. *Intel Corp. v. Hyundai Electronics America, Inc.,* 692 F.Supp. 1113, 1115 (N.D.Cal.1987) (Aguilar, J.) (citation omitted).

whether Abbott alleges that Dr. Steimer willfully concealed material prior art or whether she deliberately misstated her expert opinion, and what prior art or opinions are misstated. If Abbott cannot specify what about Dr. Steimer's seven-page declaration is deceptive, then Abbott may not allege that it is fraudulent.[2]

Because Abbott's amended answer does not adequately explain how Dr. Steimer's declaration allegedly misled the patent examiner, Abbott has failed to plead fraud with the requisite particularity. Accordingly, the defense is stricken.

*CONCLUSION*

For the foregoing reasons, Chiron's motion to strike Abbott's fourth affirmative defense of inequitable conduct is GRANTED without prejudice, and Abbott is given twenty (20) days leave from the date of this order to amend its answer to plead the defense of inequitable conduct with the requisite particularity and in conformity with this opinion.

IT IS SO ORDERED.

---

**2.** Although Abbott is required to plead the specific facts which show wrongdoing, it need not plead evidence in order to satisfy Rule 9(b). *Fu-*   *jisawa Pharmaceutical Co., Ltd. v. Kapoor,* 814 F.Supp. 720, 726 (N.D.Ill.1993).