EISAI CO., LTD., et al., Plaintiffs,

v.

TEVA PHARMACEUTICALS USA, INC., et al., Defendants.

Civil Action No. 05–5727 (HAA).

United States District Court, D. New Jersey.

Dec. 6, 2007.

Bruce M. Wexler, Joseph M. O'Malley, Paul, Hastings, Janofsky & Walker LLP, New York, NY, William J. Heller, Nicole A. Corona, McCarter & English, LLP, Newark, NJ, for Plaintiffs.

Michael E. Patunas, Allyn Zissel Lite, Lite, Depalma, Greenberg & Rivas, LLC, Newark, NJ, for Defendants.

### ORDER

ESTHER SALAS, United States Magistrate Judge.

Pending before this Court is a Motion by Teva Pharmaceuticals USA, Inc. and Teva Pharmaceuticals Industries, Ltd. ("Teva" or "Defendants") to amend its answer to include the affirmative defense of inequitable conduct. Having considered the parties' submissions as well as oral argument, the Court sets forth its opinion below.

## I. Background

In this Hatch–Waxman action, Eisai Co., Ltd. and Eisai Inc. ("Eisai" or "Plaintiffs") allege infringement of U.S. Patent No. 4,895,-841 ("the 841 patent"). The '841 patent issued on January 23, 1990, arising from the prosecution of U.S. Patent Application No. 07/209,339 ("the 339 application"). It claims "donepezil hydrochloride," the active ingredient in Aricept, which is the market-leading drug in the treatment of Alzheimer's Disease.

Seeking to manufacture and market a generic version of Aricept, Teva filed an Abbreviated New Drug Application ("ANDA") in 2004. This initial ANDA contained a certification filed pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(III) ("Paragraph III Certification") in which the ANDA-filer agrees not to market its generic drug until after expiration of the relevant patent. The '841 patent expires in November of 2010.

In October of 2005, however, Teva changed its stance, choosing to amend the ANDA such that it included a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV Certification"). Under a Paragraph IV Certification, the ANDA-filer challenges the validity of the patent itself and therefore announces to the patent-holder that it plans to market its generic product prior to the patent's expiration date. In connection with a Paragraph IV Certification, the applicant must provide the patent-holder with a Notice Letter in which it outlines the factual and legal bases for its challenge to the underlying patent. 21 U.S.C. § 355(j)(2)(B)(iv)(II). Eisai received this Notice Letter on October 26, 2005.

Having received a Notice Letter challenging the validity of its patent, on December 7, 2005, Eisai initiated this action alleging infringement of its '841 patent. Teva's Answer, filed on February 16, 2006, offered the affirmative defense of obviousness. Obviousness, at a basic level, charges that the patent itself should never have been issued because the donepezil hydrochloride molecule would have been obvious to a person of ordinary skill in the art in light of certain prior art existing at the time of the invention. A finding of obviousness renders a patent invalid.

Fifteen months later, on May 15, 2007, Teva brought the instant motion seeking to amend that Answer to add the affirmative defense of inequitable conduct. Teva claims that Eisai intentionally failed to disclose a

series of co-pending applications that were "material to the patentability of the '339 application." (Proposed Am. Answer ("Am.Answer") ¶ 29). Thus, Teva asks to amend its Answer to include inequitable conduct stemming from the failure to disclose:

1) Applications 06/946,459 and 07/321,624 ("the '459 application family") which issued as U.S. Patent Nos. 4,849,432 ("the '431 patent") and 4,942,169 ("the '169 patent");

2) Applications 07/016,035 and 07/408,106 ("the '035 application family"), which issued as U.S. Patent Nos. 4,876,262 ("the '262 patent") and 4,996,215 ("the '215 patent");

3) Application 07/177,662 ("the '662 application") which issued as U.S. Patent No. 4,921,863 ("the '863 patent"); and

4) Application 07/273,971 and its continuation applications, U.S. Patent Application Nos. 07/495,112, 07/668,327, and 07/825,423 ("the '971 application family") which issued as U.S. Patent No. 5,196,439 ("the '439 patent").

(Am. Answer ¶ 33). A finding of inequitable conduct renders the patent unenforceable.

The Court now evaluates the instant motion to amend against the equitable and legal considerations of Fed.R.Civ.P. 15(a).

## II. Analysis

 Fed.R.Civ.P. 15(a) allows a party to amend its pleading "only by leave of court" and "leave shall be freely given when justice so requires."[1] The decision to grant leave to amend rests within the discretion of the Court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Pursuant to *Foman,* leave to amend may be denied on the basis of: 1) undue delay; 2) bad faith or dilatory motive; 3) undue prejudice to the opposing party; and 4) futility of amendment. *Id.* This Court first addresses the equitable considerations impacting a motion to amend and then moves to the question of futility.

### A. Equitable Considerations

 Rule 15(a)'s liberal standard encompasses a range of equitable factors, including a party's delay in seeking leave to

amend, prejudice to the opposing party, and bad faith on the part of the movant. "Only when these factors suggest that amendment would be 'unjust' should the court deny leave." *Arthur v. Maersk, Inc.,* 434 F.3d 196, 203 (3d Cir.2006) (internal citation omitted). Amongst the factors, prejudice to the non-moving party is the touchstone for the denial of an amendment. *Id.* at 204. Eisai raises objections based on each of the three equitable factors, and the Court addresses each in turn.

### 1. Undue Delay

 "Delay alone is not sufficient to justify denial of leave to amend." *Adams v. Gould,* 739 F.2d 858, 868 (3d Cir.1984). Delay becomes undue, however, when it places an unwarranted burden on the court or an unfair burden on the opposing party. *Cureton v. NCAA,* 252 F.3d 267, 273–74 (3d. Cir.2001).

This litigation commenced with the filing of a Complaint on December 5, 2005, to which Teva filed an Answer on Feb. 16, 2006. Teva then filed this motion to amend on May 15, 2007, approximately 15 months after the Answer. There is no presumptive period in which the delay in bringing a motion to amend is automatically judged excessive but fifteen months is not unreasonable on its face. *See Arthur,* 434 F.3d at 205 (finding an 11–month period from commencement of an action to filing of a motion for leave to amend not to be presumptively unreasonable).

Supporting its contention that the delay was unreasonable in this case, Eisai says that in May 2006 it provided Interrogatory answers advising Teva of the two main individuals responsible for developing and prosecuting the '841 patent—Mr. Taniguchi and Mr. Sugimoto. Additionally, Eisai claims that it produced all relevant documents by September of 2006, including the Sugimoto memorandum that Teva now cites. Finally, Eisai says that Teva had all of the necessary facts by January 2007, the month during which it completed the document review.

---

1. Neither party contends that the "good cause" standard of Rule 16 applies here; thus, the Court evaluates the motion under the more liberal standard of Rule 15(a).

Teva does not disagree about the January 2007 date by which it had completed review of 80,000 pages of Japanese documents but advises the Court that only through the February 2007 depositions of Mr. Taniguchi and Mr. Sugimoto did their alleged involvement become clear. Teva also notes that upon completion of the document review, it learned of the materiality of the '459 and '662 applications to the '339 application. Subsequently, Teva began reviewing all of Eisai's pre-1990 patent applications to fully explore its inequitable conduct claim.

On these facts, this Court cannot find any undue delay. Teva finished reviewing documents in January, deposed Mr. Taniguchi and Mr. Sugimoto in February and May, and reviewed other patent applications during that time. In April, Teva advised Eisai of its intent to file a motion to amend and filed the motion in May after Eisai withheld consent. This Court cannot fault a party for waiting an extra couple of months to fully synthesize the information available to it before filing a motion to amend.

This is particularly true with regard to an allegation of inequitable conduct. "Allegations of inequitable conduct are serious and we cannot fault Tabco for waiting for further evidence before filing such an affirmative defense. . . ." *Douglas Press, Inc. v. Tabco, Inc.*, No 00–7338, 2004 WL 1144054, at *1 (N.D.Ill. May 17, 2004); *Rhone–Poulenc Agro S.A. v. Monsanto Co.*, 73 F.Supp.2d 537, 539 (M.D.N.C.1999). Given the time Eisai spent in its opposition brief and during oral argument noting for this Court the unfavorable characterizations given to the inequitable conduct defense (Oct. 2, 2007 Tr. 42–43), presumably they would approve of more investigation rather than less. Instead, they fault Teva for not bringing the claim quickly enough. This Court disagrees and finds no undue delay within the standard of Rule 15(a).

## 2. Bad Faith

■ Eisai's allegations of bad faith are entirely premised upon the timing of this motion vis-a-vis another concurrent litigation involving Eisai and Teva over the drug Aciphex. *Eisai Co., Ltd. v. Dr. Reddy's Labs., Ltd.*, No. 03–9053 (S.D.N.Y. Nov. 17, 2003). Eisai argues that once the district court in the Aciphex litigation rejected Teva's inequitable conduct defense, Teva immediately made the present motion (filed two days after the decision). The timing, according to Eisai, proves the bad-faith nature of the motion. (Oct. 2, 2007 Tr. 39–40, 61).

Teva, as expected, strongly contests any charges of bad faith, claiming that the Aciphex litigation had no bearing on the decision to file in this case. Moreover, Teva notes that the inequitable conduct allegations in that case survived summary judgment, thus lasting well beyond the pleading stage.

This Court is not inclined to extract a finding of bad faith from Eisai's largely speculative assertion that a finding in another case compelled Teva to make the current motion. Aside from the alleged timing of the motion, nothing in the record suggests bad faith. That objection is denied.

## 3. Undue Prejudice

■ While ordinarily the "touchstone" of the equitable considerations underpinning a motion to amend, this Court addresses the undue prejudice prong last in its analysis because Eisai's objection on this ground is limited to one paragraph on the last page of its brief in opposition. (Opp. Br. at 31). The only basis upon which it claims undue prejudice is that allowing the motion to amend will "involve seven more patent applications" and would force Eisai to "respond to vague and overbroad allegations of inequitable conduct brought in bad faith as an attempted tool for seeking a settlement." (*Id.*). Given the fact that this Court found no undue delay on Teva's part and given that the upcoming futility analysis serves to weed out "vague and overbroad allegations," this Court finds no undue prejudice to Eisai that would warrant denial of the present to motion to amend.

## B. Futility

### 1. Law

■ An amendment is considered futile if it advances a claim or defense that is legally insufficient on its face. "The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.

1983). At this stage, the question is whether Teva has sufficiently pleaded its inequitable conduct claim such that it would withstand a Rule 12 challenge.

■ In allegations involving fraud, sufficiency of pleading falls within the scope of Fed.R.Civ.P. 9(b) which states, "The circumstances constituting fraud ... shall be stated with particularity." The affirmative defense of inequitable conduct, "while a broader concept than fraud, must be pled with particularity." *Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1344 (Fed.Cir.2003); *see also Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions,* 482 F.3d 1347, 1356 (Fed.Cir. 2007). Thus, this Court analyzes the futility piece of the *Foman* equation by evaluating whether or not Teva's allegations of inequitable conduct meet Rule 9(b)'s heightened pleading standard.[2]

■ Inequitable conduct consists of 1) the failure to disclose known material information during the prosecution of a patent, 2) with intent to deceive the Patent and Trademark Office ("PTO"). *Life Techs., Inc. v. Clontech Labs., Inc.,* 224 F.3d 1320, 1324 (Fed.Cir.2000). Both elements present issues of fact and each must be proven by clear and convincing evidence. *McKesson Information Solutions, Inc. v. Bridge Medical,*

*Inc.,* 487 F.3d 897, 901, 913 (Fed.Cir.2007). To survive Rule 9(b), a party must plead each element of inequitable conduct with particularity. District courts in the Third Circuit have found that pleadings that disclose the names of the relevant prior art and acts of the alleged fraud are sufficient to meet the requirements of Rule 9(b). *Mars Inc. v. JCM Corp.,* No. 05–3165, 2006 WL 1704469 at *6 (D.N.J. June 14, 2006); *see also Cent. Admixture Pharmacy Servs.,* 482 F.3d at 1356–57 (affirming dismissal of inequitable conduct defense due to failure to plead with particularity, including failure to identify "relevant and undisclosed prior art"). Thus, the Third Circuit does not require a party to plead the date, time, or place of the inequitable conduct, so long as the pleadings "supply the adverse party with notice of the precise misconduct alleged." *EMC Corp. v. Storage Technology Corp.,* 921 F.Supp. 1261, 1263 (D.Del.1996).[3]

This Court, then, evaluates Teva's allegations against the standard of Rule 9(b)'s heightened pleading requirement and the two-part test for proving inequitable conduct.[4] Noting, however, that this is the pleading stage, Teva only has to plead enough facts to survive Rule 9(b); Teva is under no duty to offer evidence, prove its case or surpass a clear and convincing evidence standard.[5] *Chiron Corp. v. Abbott*

---

2. The Supreme Court's decision in *Bell Atlantic v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), does not change the substantive analysis here. That decision addressed specificity in pleading with regard to Fed.R.Civ.P. 8. Addressing Rule 9, the Court stated simply that it did not "seek to broaden the scope of Federal Rule of Civil Procedure 9," and that Rule 9(b) applies to "certain subjects understood to raise a high risk of abusive litigation." *Id.* at 1973 n. 14.

3. In evaluating the allegations, the Court is aware of the general disfavor with which many courts, including the Federal Circuit, have viewed allegations of inequitable conduct. *Burlington Indus., Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed.Cir.1988) (referring to inequitable conduct as an absolute plague). The application of Rule 9(b)'s strict pleading requirements, however, guards against the potential fishing expedition brought on by vague allegations of inequitable conduct. *Chiron Corp. v. Abbott Laboratories,* 156 F.R.D. 219, 221 (N.D.Cal.1994) ("Rule 9(b)'s requirement that averments of fraud be pled with particularity is a simple, logical, and fair way to protect patent litigants.")

4. Teva repeatedly refers the strength of its allegations in terms of number of pages and number of paragraphs, stating over and over again that "forty-one paragraphs spanning thirteen pages" must satisfy Rule 9(b). (*See, e.g.,* Reply Br. at 1, 6). The Court disagrees. Artificial barometers of specificity, such as page-length and number of pages, play no role in a detailed evaluation of whether or not each allegation possesses requisite specificity. Thus, a comparison with amended pleadings of other cases, in terms of paragraphs and pages, *see* Reply Br. at 5, is not compelling and offers little guidance to this Court.

5. Much of Eisai's opposition conflates the standard for proving inequitable conduct with Rule 9(b)'s heightened requirement for pleading it. *See, e.g.,* Opp. Br. at 10 (discussing the standard of proof for inequitable conduct). The standard of proof and the evidence necessary for Teva to sustain its burden are not questions currently before this Court; the only question raised in this motion to amend, with regard to futility, is whether Teva has alleged the basis for its defense with enough factual specificity so as to meet the standard of Rule 9(b).

*Laboratories,* 156 F.R.D. 219, 223 n. 2 (N.D.Cal.1994) ("Although Abbott is required to plead the specific facts which show wrongdoing, it need not plead evidence in order to satisfy Rule 9(b).").

## 2. Analysis

The parties disagree at the outset over how to evaluate Teva's proposed amendments. Eisai urges the Court to analyze each of the four withheld co-pending applications as four separate allegations of inequitable conduct. Thus, the Court would apply the 9(b) standard to each individual amendment. Teva argues that the four applications all relate to a single basis of inequitable conduct premised on Eisai's failure to disclose the '431 patent. Specifically, Teva's argues in its reply brief and at oral argument that the failure to disclose other co-pending applications, aside from the '459 application (which resulted in the '431 patent), proves a "pattern of failures to disclose," thereby "evidencing an intent to deceive the Patent Office." (Reply Br. at 1). Thus, Teva essentially asks the Court to apply Rule 9(b) once—to the '339 application—and to regard the remaining applications as evidence of Eisai's intent to deceive within the analysis of that one instance of inequitable conduct.

Teva's artful attempt to blend all four co-pending applications into one allegation of inequitable conduct, however, is belied by the language of the proposed Amended Answer itself. There, Teva alleges that "Applicants [Eisai] failed to disclose a series of material co-pending applications to the examiner of the '339 application." (Am. Answer ¶ 33). Contrary to Teva's "single basis of inequitable conduct" argument, Paragraph 33 makes clear that Teva alleges each co-pending application to have been material to that of the '339 application. Thus, each application presents a new and separate instance of inequitable conduct. This Court, therefore, will treat the amendments as four separate instances of inequitable conduct and evaluate each in turn under the heightened pleading standard of Rule 9(b).

■ Finally, the Court notes Eisai's argument that Teva has failed generally to allege inequitable conduct with respect to the to '841 patent as issued. By way of history, the initial '339 application was rejected by the PTO Examiner ("Examiner Schwartz"). Eisai then amended the application with a narrower set of claims and this amended and narrowed application eventually was approved and issued as the '841 patent. Thus, Eisai claims that Teva must plead inequitable conduct with respect to prosecution of the '841 patent as issued and not to the broader initial '339 application. This Court agrees. A successful claim of inequitable conduct renders the issued patent unenforceable. In this case, however, inequitable conduct as to the initial '339 application, which was rejected, is not relevant to the '841 patent—which is the patent at issue in this action. Each allegation shall be evaluated accordingly, and Teva shall have to plead fraud with regard to the '339 application as amended.

### 1. The '459 Application Family

■ Within paragraphs 35–49 of its Amended Answer, Teva pleads inequitable conduct stemming from Eisai's failure to disclose the co-pending '459 application during prosecution of the '339 application.

Paragraphs 35–42 discuss with specificity the materiality of several pieces of prior art, cited during prosecution of the '459 application family, that should have been disclosed to Examiner Schwartz. While these paragraphs adequately identify the prior art in question, they all deal with the initially-filed '339 application, rather than the '339 application as amended. Teva's claims of inequitable conduct regarding the original '339 application are irrelevant to the '841 patent as issued, and therefore this Court strikes Paragraphs 35–42.

■ The remaining discussion of the '459 application, Paragraphs 42–49, adequately alleges inequitable conduct specifically with regard to the '841 patent as issued. Addressing the amended '339 application, Paragraph 43 of the Amended Answer states: "Applicants, however, did not disclose to Examiner Schwartz that analogous piperidine derivative compounds with a phenylalkyl group and a 1–10 carbon linker were already disclosed and claimed in the '431 patent (the patent that issued from the '459 application)." (Amended Answers ¶ 43). Following that allegation, Teva identifies three pieces of prior

art—the '431 patent, the '759 patent and Kenley 1984—that should have been disclosed to the Examiner during consideration of the *amended* '339 application. (*Id.* ¶ 44). Then Teva again references the amended '339 application in Paragraphs 47–49. Altogether, Teva's allegations in these paragraphs clearly focus on the amended '339 application—the application that resulted in the '841 patent.

Moreover, in these remaining paragraphs, Teva provides sufficient detail to apprise Eisai of the factual basis for its allegations. It identifies undisclosed prior art. (*Id.* ¶ 44). It links the prior art to the '841 patent. (*Id.* ¶¶ 47–49). It identifies the individual at Eisai who had knowledge of the prior art. (*Id.* ¶ 46). And, finally, it alleges that the failure to disclose this material prior art was done with intent to deceive the PTO. (*Id.* ¶ 49). Considering all of the above, the Court finds that Paragraphs 42–49 properly allege inequitable conduct with respect to the amended '339 application and '841 patent as issued. As such, the motion to amend with respect to Paragraphs 42–49 is granted.

### 2. The '035 Application Family and the '662 Application

█ In stark contrast to the specificity contained within Paragraphs 42–49, Teva's allegations with regard to the next two applications offer only vague and conclusory buzzwords that do not meet Rule 9(b)'s standards. Moreover, each of the remaining allegations pertains to the original '339 application and not to the '841 patent as issued. (Opp. Br. At 21).

Taking each of the remaining allegations in order, Teva first alleges non-disclosure of the '035 application family and '662 application. Using boilerplate language for each of these allegations, Teva simply states that each was co-pending with the '339 application, each pertained to subject similar matter, and each was not disclosed to the respective patent examiner despite being material to the others. Aside from the fact that there is no discussion of specific claims or specific pieces of prior art and no linkage to the '841 patent as issued, Teva also fails to allege any *intentional* withholding of information from the patent office. These allegations, therefore, fall far short of alleging with specificity the elements required to prove inequitable conduct, especially with regard to the amended '339 application. Each of these amendments is denied.

### 3. The '971 Application Family

Finally, Teva alleges misconduct stemming from non-disclosure of the '971 application family. In addition to the boilerplate language regarding the similarity in "technology" and "content" between the '339 application and the '971 application, Teva alleges that the '971 application was rejected over two pieces of prior art—JP '565 and WO '365. Teva then alleges that each of those pieces of prior art should have been disclosed during the '339 application process. Once again, however, this allegation fails as it addresses the initial '339 Application and not the amended one from which the '841 patent issued.

Moreover, none of these allegations plead enough factual content to satisfy the dictates of Rule 9(b). First, Teva again fails to allege intent to deceive the PTO, a required element for proof of inequitable conduct. And though Teva alleges the prior art to have been material to the '339 application, it alleges no facts upon which Eisai can determine how or why that is the case. All of these flaws are fatal to Teva's allegation of inequitable conduct as to the '971 application family.

Notably, perhaps cognizant of the above deficiencies, Teva spends the entirety of its reply brief responding to inequitable conduct claims regarding the '459 application without remedying or addressing the deficits as to any of the other allegations. And because Teva places so much emphasis upon the "41 paragraphs spanning 13 pages," it is worth noting that allegations as to the '035 application family (3 paragraphs, 1 page), the '662 application (3 paragraphs, 1/2 page), and '971 application family (7 paragraphs, 2 pages) each constitute a tiny fraction of the aforementioned 41 paragraphs and 13 pages.

Teva's amendment with respect to the '971 application family is denied.

### III. CONCLUSION

Given the clear interest in allowing only specifically-pled inequitable conduct claims to

continue, this Court denies in part and grants in part Teva's motion to amend its answer to include the affirmative defense of inequitable conduct. With respect to the '035 application family, the '662 application, and the '971 application family, the motion to amend is **DENIED**. As for the '459 application family, the allegations of withholding prior art with respect to the initial '339 Application are **DENIED**. The motion to amend the Answer to include an allegation of inequitable conduct with respect to the '459 application family and the amended '339 application is **GRANTED**. (Am. Answer ¶¶ 42–29).

Teva shall file a new amended answer in accordance with the above rulings within 10 days of receiving this Order.

**SO ORDERED.**